*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A K-L HUNT, Minor.

UNPUBLISHED
August 11, 2022

No. 359711
St. Joseph Circuit Court
Family Division
LC No. 19-001023-NA

Before: RICK, P.J., and BOONSTRA and O'BRIEN, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating his parental rights to his minor child, AK. (Order following hearing to terminate parental rights, 9/23/21). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Respondent is the legal father of AK.[1] In 2019, respondent resided with his wife (AH) and AK. On December 12, 2019, petitioner, Department of Health and Human Services (DHHS or petitioner), filed a petition with the trial court requesting that the trial court take jurisdiction over AK and remove respondent from the home. (Petition, 12/12/19). The petition alleged that respondent had physically assaulted AH in the home on December 9, 2019, and that AK was "in the home and crying" during the incident. (*Id.*). AK was approximately one month old at the time of the incident. The petition also alleged that respondent had a history of domestic violence against his romantic partners, and had served a prison sentence for aggravated domestic violence against a previous partner. (*Id.*). The petition also alleged that respondent's rights to another child were terminated in 2009 and that respondent "did not participate in services to address barriers of domestic violence and substance abuse." (*Id.*).

At the removal hearing, respondent entered a plea of admission to the allegations that he had committed domestic violence against AH, and that he had "a pattern or history of domestic violence" as well as "ongoing, unresolved incidents of domestic violence." (Removal hearing

---

[1] AK's mother was not a respondent in the proceedings below and is not a party to this appeal. AK remained placed with his mother throughout these proceedings.

-1-

transcript, 12/12/19, pp 13-14). Petitioner agreed not to seek termination of respondent's parental rights and that it instead would provide services aimed at reunification. (*Id*. at 6). The trial court took jurisdiction over AK and ordered that respondent leave the home. (See order removing alleged abuser from child's home, 12/12/19). The trial court ordered that respondent submit to a drug screen before beginning supervised parenting time, and ordered respondent to have no contact with AH. (Order of adjudication, 12/12/19).

At some point over the next year, respondent was convicted of domestic violence against AH and sentenced to probation. Respondent attended a dispositional review hearing in March 2020; his caseworker testified that he had been unable to reach respondent by in-person visit or mail, but that respondent had sent her a text message the previous week. (Disp review hearing, 3/12/20, 4-5). The caseworker testified that respondent had not yet participated in any services or parenting time, but had submitted to a drug screen on the day of the hearing. (*Id*. at 6-7). Respondent was referred to several services, including a psychological evaluation, domestic violence counseling, and the Batterers Intervention program.

Unfortunately, respondent's engagement in March represented a high-water mark in his cooperation with DHHS and in his participation in services. Respondent appeared for a review hearing in June 2020, but decided to leave and allow his attorney to represent him. (Disp review hearing, 6/11/20). Respondent's caseworker testified that respondent had "left a couple messages with Secure Counseling to set up his domestic violence inventory," but had not pursued the matter further. The caseworker had had no contact with respondent since the end of March. However, the caseworker did indicate that the COVID-19 pandemic may have interfered with respondent's efforts to engage in services, and added that respondent had participated in some supervised parenting time in March that had gone well. (*Id*. at 4-5). Respondent did not attend the next dispositional review hearing in September 2020, and his caseworker testified that she had been unable to reach him by phone, text message, in-person visit, or mail. (Disp review hearing, 9/10/20, 4-5). The caseworker testified that respondent had made no progress on his treatment plan and had not taken any steps to address his issues with domestic violence or mental health. (*Id*. at 5). DHHS requested that the trial court order it to initiate proceedings to terminate respondent's parental rights, but the trial court declined to do so (*Id*. at 9).

The dispositional hearing in December 2020 was more of the same; respondent did not attend, his caseworker had not heard from him, and there was no evidence that he had engaged in services of any kind. (Disp review hearing, 12/17/20, 3-4). The trial court ordered the goal changed to termination and ordered DHHS to initiate proceedings to terminate respondent's parental rights.

In January 2021, respondent violated the terms of his probation by having contact with AK's mother, and was incarcerated in St. Joseph County Jail to serve out the remainder of his one-year sentence. (Supplemental petition, 4/21/21; see also termination hearing transcript, 9/23/11, 11). At a review hearing in March 2021, respondent's caseworker testified that respondent was incarcerated for a probation violation, and that prior to his incarceration he had not completed any court-ordered services despite having received referrals. (Disp review hearing, 3/11/21, 5). No services were currently available to respondent in jail due to the COVID-19 pandemic. (*Id*. at 6).

Respondent's termination hearing was originally scheduled for June 4, 2021. However, at the beginning of the hearing, respondent's counsel informed the trial court that respondent

intended to retain alternate counsel, and that respondent's estimated release date from jail was in July. Respondent testified via phone and confirmed this information, stating that his release date would be July 29. (Termination hearing, 6/4/21, 3-6). The trial court agreed to adjourn the termination hearing until sometime after August 2021. (*Id*. at 7).

At a review hearing in September 2021, respondent's counsel testified that respondent was still incarcerated, having lost his "good time" credits due to "rules violations in the kitchen." (Disp review hearing, 9/9/21). Respondent's termination hearing was held on September 23, 2021. Respondent was still incarcerated. (Termination hearing, 9/23/11, 11). Respondent's caseworker testified that respondent's parole violation involved not only contact with AK's mother, but "reports of another domestic violence incident against [AH]." AK was in the home at the time respondent made contact with AH and allegedly committed domestic violence against her, although the caseworker was not aware whether AK had witnessed the incident. (*Id*. at 23-24).

In the year between the adjudication and respondent's re-incarceration, respondent's compliance with services was limited to providing one drug screen, which was positive for THC. (*Id*. at 11). Respondent made no contact with DHHS from March 2020 until after his arrest in January 2021. (*Id*.). Specifically, respondent never even began to address his issues with domestic violence, despite being referred multiple times to specific services to address this issue. (*Id*. at 12-13). Respondent did complete some supervised parenting time prior to March of 2020, although the caseworker testified that the COVID-19 pandemic had impacted respondent's ability to exercise his parenting time safely. (*Id*.).

The trial court found that statutory grounds for termination of respondent's parental rights to AK under MCL 712A.19b(3)(c)(*i*) had been proven by clear and convincing evidence. The trial court stated that "the proofs here are very clear, that there was a whole year, basically, that went by, from December of 2019, that [respondent] did absolutely nothing that the Court ordered him to do." (*Id*. at 34, 36-37). The trial court also found that the statutory grounds of MCL 712A.19b(3)(j) had been proven by clear and convincing evidence. The trial court subsequently determined that termination was in AK's best interests, noting that AK lived with his mother, who "has been the focus of the domestic violence" from respondent, and holding that there was no bond between respondent and AK, whom respondent had last seen in March 2020. (*Id*. at 40-42).

This appeal followed.

## II. REASONABLE EFFORTS AT REUNIFICATION

Respondent argues that petitioner failed to make reasonable efforts to provide him with services aimed at reunification, specifically during the time that respondent was incarcerated. We disagree.

We review for clear error a trial court's decision that a statutory ground for termination of parental rights has been established. *In re JK*, 468 Mich 202, 209; 661 NW2d 216 (2003). We also review for clear error a trial court's factual findings. See MCR 3.911(K); *In re Gonzales/Martinez*, 310 Mich App 426, 430; 871 NW2d 868 (2015). The trial court's decision "is clearly erroneous if, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468

Mich at 209-210. The petitioner must only establish one statutory ground for termination of a respondent's parental rights. See *In re Olive/Metts*, 297 Mich App 35, 41; 823 NW2d 144 (2012). Therefore, so long as the trial court properly found at least one ground for termination, any error by the trial court in finding that another statutory ground also existed is harmless. *In re Powers Minors*, 244 Mich App 111, 118; 624 NW2d 472 (2000).

To preserve a challenge to the sufficiency of the services provided by DHHS, respondent must object or indicate that the services provided to him were inadequate. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). Respondent did not raise this issue with the trial court, either at the time or after the goal was changed to termination in February 5, 2020. This issue is, therefore, unpreserved and reviewed for plain error affecting substantial rights. *In re Baham*, 331 Mich App 737, 745; 954 NW2d 529 (2020); see also *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Plain error "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

"Generally, when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re HRC*, 286 Mich App 444, 462; 781 NW2d 105 (2009). The petitioner is not required to provide reunification services when the goal is termination of parental rights. *Id*. at 463.

Respondent alleges that "the court took jurisdiction over this matter while [respondent] was incarcerated" and "spent a significant period of time incarcerated during this case and was in fact in jail during the termination trial." Therefore, respondent argues, DHHS failed in its duty to make reasonable efforts at reunification by failing to provide him with services while incarcerated. Respondent's argument lacks factual support from the record. Although respondent was arrested on December 9, 2019 for domestic violence against AK's mother, and was lodged in the St. Joseph County Jail at the time of the removal hearing on December 12, 2019, the record shows that he was released not long after; at a minimum, he was released long enough to have provided a home address for service of court documents by March 5, 2020. He was not incarcerated again until January 2021, at which point the goal had already been changed from reunification to termination. Petitioner was not required to make reasonable efforts to provide services at that time. *HRC*, 286 Mich App at 462.

Even if respondent had been incarcerated from December 9, 2019 until early March 2020, and even assuming that petitioner failed to provide him with services during this time, and even *further* assuming that this failure was unreasonable, respondent does not explain how this failure resulted in his near-complete failure to engage in services from March to December 2020. The record shows that respondent refused even the most basic level of engagement, such as providing a medical release to petitioner, or completing any scheduled evaluations to determine what services would best benefit him, while not incarcerated. Even if petitioner should have done more during the initial three months of this case, respondent's conduct while not incarcerated has convinced us that respondent was not prejudiced by any error. *Carines*, 460 Mich at 763.

Because respondent does not raise any other challenge to the trial court's determination that statutory grounds for termination exist, we affirm that determination.

## III. BEST-INTEREST DETERMINATION

Respondent also argues that the trial court erred by determining that termination of his parental rights was in AK's best interests. We disagree. We review for clear error a trial court's decision that termination of parental rights is in the children's best interests. *JK*, 468 Mich at 209.

If the trial court finds that there are statutory grounds for termination of parental rights, the trial court must order termination of the parent's parental rights if it finds that termination is in the children's best interests. MCL 712A.19b(5). The petitioner must prove by a preponderance of the evidence that termination of parental rights is in the child's best interests. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). When making a best interest determination, the focus is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). When making this determination, the trial court "may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App 35, 41-42 (citations omitted). "Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan." *In re Payne/Pumphrey/Fortson Minors*, 311 Mich App 49, 64; 874 NW2d 205 (2015) (quotation marks and citation omitted). This Court has stated that the trial court must determine each child's best interests individually. The trial court must consider the needs of each child, but need only specifically address the best interests of individual children if the children's interests significantly differ. *Olive/Metts*, 297 Mich App at 42; *In re White*, 303 Mich App 701, 715; 846 NW2d 61 (2014).

In this case, the trial court held that no bond existed between respondent and AK, noting that respondent had last visited AK in March 2020 (unless the incident in which respondent violated his probation involved him interacting with AK, but that fact was not established at the termination hearing). The trial court further noted that AK was doing very well living with his mother. Although respondent argues that the few supervised parenting time visits he completed between January and March 2020 had gone well, that fact does not overshadow the fact that respondent remains a significant danger to AK's mother and AK himself. Respondent proved himself unable to abide by a court order to leave AH alone, and unwilling to address the issues that led him to repeatedly commit domestic violence against his romantic partners. AK, despite his young age, was already present for two domestic violence incidents resulting in respondent's arrest. The trial court did not clearly err by determining that AK's need for safety, stability, and permanence was best served by termination of respondent's parental rights. *Olive/Metts*, 297 Mich App at 41-42.

Affirmed.

/s/ Michelle M. Rick
/s/ Mark T. Boonstra
/s/ Colleen A. O'Brien